UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

LATOYA ORR,                                          Case No. 14 CV 10010
                        Plaintiff,                   (WHP)

            -against-                                **AMENDED COMPLAINT**

THE CITY OF NEW YORK, P.O. ERIC                      JURY DEMAND
DUVAL [SHIELD # 8109], P.O. NICHOLAS
VIRGILIO [SHIELD # 24819], P.O.
CHRISTOPHER NUNZIATO [SHIELD
# 09883], P.O. JOSEPH CUERVO [SHIELD
# 27083] and JOHN DOE AND JANE DOE,
                        Defendants.
------------------------------------------------------------X


Plaintiff, LATOYA ORR, by her attorney, The Law Offices of UGO UZOH, P.C.,
complaining of the defendants herein, The City of New York, P.O. Eric Duval [Shield #
8109], P.O. Nicholas Virgilio [Shield # 24819], P.O. Christopher Nunziato [Shield #
09883], P.O. Joseph Cuervo [Shield # 27083] and John Doe and Jane Doe (collectively,
"defendants"), respectfully alleges as follows:

<u>NATURE OF THE ACTION</u>

1.       This is an action at law to redress the deprivation of rights secured to the
         plaintiff under color of statute, ordinance, regulation, custom, and/or to
         redress the deprivation of rights, privileges, and immunities secured to the
         plaintiff by the First, Fourth, Fifth, Sixth, Eight and Fourteenth Amendments
         to the Constitution of the United States, and by Title 42 U.S.C. §1983, and
         arising under the law and statutes of the City and State of New York.

<u>JURISDICTION</u>

2.       The jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 1983, 28
         U.S.C. § 1343, 28 U.S.C. § 1331 and 28 U.S.C. § 1367, and under the First,
         Fourth, Fifth, Sixth, Eight and Fourteenth Amendments to the United States
         Constitution.

3.      As the deprivation of rights complained of herein occurred within the Southern District of New York, venue is proper in this district pursuant to 28 U.S.C. §1391 (b) and (c).

## COMPLIANCE WITH N.Y. GEN. MUN. LAW REQUIREMENTS

4.      Plaintiff timely made and served a notice of claim upon the defendants in compliance with N.Y. Gen. Mun. Law § 50-e.

5.      At least thirty days have elapsed since the service of aforesaid notice of claim and adjustment or payment thereof has been neglected or refused.

6.      This action is commenced within one year and ninety days after the happening of the event(s) upon which the claim(s) is based.

## THE PARTIES

7.      Plaintiff is and was at all times material herein a resident of the United States and the State of New York.

8.      At all relevant times, defendants P.O. Eric Duval [Shield # 8109], P.O. Nicholas Virgilio [Shield # 24819], P.O. Christopher Nunziato [Shield # 09883], P.O. Joseph Cuervo [Shield # 27083] and John Doe and Jane Doe (hereinafter "defendant officers") were, upon information and belief, and still are, agents and/or officers employed by defendant City of New York.

9.      At all times herein, the defendant officers were acting under the color of their official capacity, and their acts were/are performed under color of the statutes and ordinances of the City of New York and/or the State of New York. Defendant officers were/are the servants, agents, and employees of their co-defendant, the City of New York, such that their acts are imputed to the City of New York.

10.     At all relevant times, the defendant City of New York was and is a municipal corporation duly organized and existing under the laws of the State of New York, and was/is the employer of the defendant officers, and the actions of the defendant officers complained of herein were done as part of the custom, practice, usage, regulation and/or at the direction of the defendant City of New York.

11.     Plaintiff is suing the defendant officers in their individual and official capacities.

FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

12.     On or about November 20, 2013, at approximately 5:30 p.m., defendant officers, acting in concert, arrested plaintiff without cause at or within the vicinity of 21 W 8th Street, New York, New York, and charged plaintiff with PL 155.25 'Petit larceny' and PL 140.10 'Criminal trespass in the third degree.'

13.     Plaintiff, however, did not steal any property, did not enter or remain unlawfully in any building or property, and did not commit any offense against the laws of New York City and/or State for which any arrest may be lawfully made.

14.     Prior to the arrest, plaintiff and her friends, Ronald Banks and Jamel Williams, who at the time were attending school at New York City District Council of Carpenters Labor Technical College ("Technical College"), went to a nearby bar at aforesaid address after school for a drink.

15.     Plaintiff and her friends were seated at a table located right across from the bar, and were the only patrons of the bar at the time.

16.     While at the bar, plaintiff and her friends ordered drinks from the bartender.

17.     Plaintiff and her friends duly paid for the drinks.

18.     After a period of time, plaintiff and her friends left their table to use the restroom at the bar.

19.     Plaintiff and her friends left their drinks and book bags on the table.

20.     After approximately four (4) minutes had elapsed, plaintiff and her friends returned to their table from the restroom.

21.     Upon returning to the table, plaintiff and her friends realized that their drinks -- including, but not necessarily limited to, a pitcher of beer and two shots of vodka -- had been removed from the table.

22.     Upon the plaintiff's inquiry, the bartender stated that he cleaned up the table and discarded their drinks because he wanted them to leave the bar.

23.     The bartender then indicated that the plaintiff and her friends were no longer wanted at the bar and proceeded to ask them to leave the bar.

24.     When plaintiff and her friends inquired as to the reason why they had to leave the bar, the bartender simply insisted that they leave the bar immediately.

25.     Plaintiff and her friends then proceeded to leave the bar.

26.     As soon as plaintiff and her friends stepped outside the bar, they were bum-rushed by defendant officers who immediately ordered them to place their hands on the police vehicle.

27.     When the plaintiff inquired as to the reason why she and her friends were stopped, she was shouted down by defendant officers.

28.     Defendant officers then proceeded to tightly handcuff the plaintiff and her friends with their hands placed behind their backs.

29.     Defendant officers further subjected the plaintiff and her friends to an illegal search.

30.     Even though the defendant officers did not recover any contraband from their illegal search, they still transported the plaintiff and her friends to NYPD-6th Precinct.

31.     Because the plaintiff continued to inquire as to the reason for the actions taken against her and her friends by defendant officers, she was subjected to physical and verbal abuse by defendant officers.

32.     Defendant officers forcibly pushed, pulled, grabbed and shoved the plaintiff, and forcibly pulled her by arms and twisted her arms even though her arms were tightly handcuffed behind her back.

33.     While at the precinct, defendant officers tightly handcuffed each of plaintiff's arms to a separate bench and also shackled her ankle to a bench.

34.     Defendant officers further subjected the plaintiff to an illegal and inappropriate search at the precinct with a male officer inappropriately touching and searching the plaintiff's private bodily parts.

35.     Because of the excessive force used by defendant officers, plaintiff was caused to sustain serious injuries on her wrists, back, shoulders and other parts of her body.

36.     Defendant officers eventually transported the plaintiff to the hospital and a mental health clinic where she was seen and/or treated by emergency room physicians.

37.     Upon her discharge, defendant officers transported plaintiff back to NYPD-6th Precinct.

38.     After detaining the plaintiff for a lengthy period of time at NYPD-6th Precinct, plaintiff was transported to the Central Booking to await arraignment.

39.     While plaintiff was awaiting arraignment, defendant officers met with prosecutors employed by the New York County District Attorney's Office.

40.     During this meeting, defendant officers falsely stated to the prosecutors, among other things, that plaintiff stole certain properties and remained unlawfully in a building and/or property.

41.     Based on the false testimony of defendant officers, a prosecution was commenced against plaintiff.

42.     Upon arraignment, plaintiff was released on her own recognizance but was required to return to the criminal court to defend the false charges levied against her.

43.     On or about March 6, 2014, the false charges levied against plaintiff were summarily dismissed upon motion by the prosecutors.

44.     Because of the actions taken by defendant officers, including but not limited to the false arrest and malicious prosecution described above, plaintiff was unable to attend many of her trainings or classes at the Technical College.

45.     As a result, plaintiff was terminated by the Technical College and her name was stricken from the school's job referral list.

46.     Plaintiff was unable to complete her trainings and obtain her diploma, remains unemployed and/or underemployed and has missed several

opportunities to secure gainful employment because of the arrest and false charges levied against her by defendants.

47.     That each and every officer who responded to and/or was present at the location of the arrest and/or at the precinct or facility knew and was fully aware that the plaintiff did not commit any crime or offense, and had a realistic opportunity to intervene to prevent the harm detailed above from occurring.

48.     Nonetheless, defendant officers did absolutely nothing to discourage and prevent the harm detailed above from occurring and failed to intervene.

49.     As a result of the aforesaid actions by defendants, plaintiff suffered and continues to suffer emotional distress, fear, embarrassment, humiliation, shock, discomfort, loss of liberty, loss of rights to familial association, wages and financial losses, pain and damage, and damage to reputation.

FIRST CAUSE OF ACTION: 42 U.S.C. § 1983

50.     By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 49 of this complaint as though fully set forth herein.

51.     The conduct of defendant officers, as described herein, amounted to false arrest, excessive use of force, failure to intervene, deliberate indifference, cruel and inhuman treatment, cruel and unusual punishment, unlawful stop and frisk, unreasonable detention, unreasonable search and seizure, pattern of harassment, first amendment retaliation, conspiracy, discrimination, fabrication of evidence, denial of equal protection of the laws, denial of right to a fair trial, denial of due process rights and malicious prosecution.

52.     Such conduct violated plaintiff's rights under 42 U.S.C. § 1983 and the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

53.     Consequently, plaintiff has been damaged and hereby demands compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

SECOND CAUSE OF ACTION: FAILURE TO TRAIN/SUPERVISE/DISCIPLINE
AND MUNICIPAL POLICY - against defendant City of New York

54.    By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 53 of this complaint as though fully set forth herein.

55.    Defendant City of New York, acting through the New York Police Department, had actual and/or de facto policies, practices, customs and/or usages of failing to properly train, supervise or discipline its police officers concerning correct practices in conducting investigations, the use of force, interviewing of witnesses and informants, assessment of the credibility of witnesses and informants, reasonable search of individuals and/or their properties, the seizure, voucher and/or release of seized properties, obligation not to promote or condone perjury and/or assist in the prosecution of innocent persons and obligation to effect an arrest only when probable cause exists for such arrest.

56.    Additionally, defendant City of New York, acting through District Attorney Cyrus R. Vance, Jr. and the Office of the District Attorney of the New York County, had actual and/or de facto policies, practices, customs and/or usages of failing to properly train, supervise, and discipline its Assistant District Attorneys and employees concerning correct practices in conducting investigations, interviewing witnesses and informants, assessing the credibility of witnesses and informants, the initiation and/or prosecution of criminal actions, obligation not to promote or condone perjury and/or assist in the prosecution of innocent persons and the expected standard of practice for candor with the court.

57.    Defendant City of New York, acting through aforesaid NYPD and District Attorney, had actual and/or de facto policies, practices, customs and/or usages of wrongfully arresting, illegally stopping, frisking, searching, seizing, abusing, humiliating, degrading and/or maliciously prosecuting individuals who are members of racial/ethnic minority groups such as plaintiff, who is black, on the pretext that they were involved in narcotics, drugs, guns, robberies and/or other illicit activities.

58.      Further, the existence of the aforesaid unconstitutional policies, practices, customs and/or usages may be inferred from repeated occurrences of similar wrongful conduct.

59.      For example, in *Floyd v. City of New York*, 813 F. Supp. 2d 417, 422 (S.D.N.Y. 2011), the Southern District of New York observed that the City of New York had been accused of racial profiling on multiple occasions and that it had settled at least one of the lawsuits brought against it concerning racial profiling.

60.      In *Ligon v. City of New York*, 12 Civ. 2274, 2013 U.S. Dist. LEXIS 22383, at *9-*10 (S.D.N.Y. Feb. 14, 2013), the Court determined that the City of New York, acting through the NYPD, engages in illegal and unreasonable stop, frisk, search and seizure. *See also Davis v. City of New York*, 10 Civ. 0699, 2013 U.S. Dist. LEXIS 45601 (S.D.N.Y. March 28, 2013) (same).

61.      Additionally, NYPD Police Officer Michael Carsey was recently convicted of felonies for lying under oath and falsifying information while applying for a search warrant.

62.      Police Officer Carsey's supervisor, Sergeant William Eiseman, had earlier admitted to fabricating facts to justify searching vehicles and homes for cocaine, marijuana and guns, filing false information to obtain search warrants and performing illegal searches of vehicles and homes. That Sergeant Eiseman admitted to perjury and fabricating evidence against innocent persons that he falsely arrested and charged with possession of narcotics and/or illegal drugs, and also admitted to training numerous young police officers to commit similar crimes and/or offenses.

63.      In addition, in or about October 2011, Detective Stephen Anderson testified against Detective Jason Arbeeny, a veteran of the NYPD. That Detective Anderson testified that, among other things, it is a common practice within the NYPD to plant narcotics and/or illegal drugs -- commonly known within the NYPD as "flaking" -- on innocent persons in order to meet arrest quotas. Detective Anderson referred to the practice of planting narcotics and/or illegal drugs on innocent persons as "attaching bodies" to the narcotics

and/or illegal drugs. According to Detective Anderson, this practice "was something I was seeing a lot of, whether it was from supervisors or undercovers and even investigators."

64.     Regarding the issue of arrest quotas, Detective Anderson confirmed that the NYPD requires officers to fill quotas, and testified that even as a detective "you still have a number [of arrests] to reach while you are in the narcotics division."

65.     Recently, a jury determined that officers of the NYPD are permitted, as a policy and/or practice, to fill their arrest quotas by making unlawful arrests. *See Bryant v. City of New York*, Index No. 22011/07 (Sup. Ct. County of Kings Feb. 18, 2011).

66.     Prior to his testimony, Detective Anderson and his partner provided false testimony in court claiming that they purchased cocaine from certain individuals who as surveillance video later confirmed did not have any sort of contact or communication with Detective Anderson and his partner during the time period that Detective Anderson and his partner claimed to have purchased the controlled substances and/or illegal drugs.

67.     That Detective Arbeeny was subsequently convicted of planting controlled substances and/or illegal drugs on a woman and her boyfriend, and was convicted of the charges against him including official misconduct, offering a false instrument for filing and falsifying business records.

68.     That the New York Supreme Court, County of Kings, Criminal Term, Gustin L. Reichbach, J., determined that the NYPD's drug unit has a system of flawed procedures that caused Detective Arbeeny's unlawful actions. Judge Reichbach further determined that the NYPD's drug unit has a widespread culture of corruption and has adopted a "cowboy culture" and practice which he described as "[a]nything goes in the never-ending war on drugs." That Judge Reichbach expressed shock at what he described as "the seeming pervasive scope of misconduct [and even worse] . . . the seeming casualness by which such conduct is employed."

69.     Further, in or about 2008, the New York Supreme Court, County of Kings, Criminal Term, Albert Tomei, J., determined at a Mapp hearing in *People v. Simms*, Indictment No. 11263/07, which was held on or about September 9, 2008, that the police officers involved in the arrest in that matter are "not credible" and that the police officers' "testimony is so obviously fabricated . . . to avoid any Constitutional objections the defendant may have . . . and that [any] property taken . . . is to be suppressed because it was the product of an unlawful arrest and search and seizure."

70.     In addition to the instances of police misconduct described above, several officers of the NYPD -- including but not limited to Detective Christopher Perino, Police Officer Michael Daragjati, Police Officer Henry Tavarez, Police Officer William Masso, Detective Oscar Sandino, Detective Sean Johnstone, Sergeant Michael Arenella, Sergeant Jerry Bowens, Police Officer Michael Pena, Police Officer Nicholas Mina, Detective Kevin Spellman and Police Officer Admir Kacamakovic -- have recently been convicted of various similar crimes as those described herein including but not limited to falsifying police reports, perjury, corruption, robbery, gun running, drug dealing, prostitution, theft and assault. Former NYPD Commissioner Bernard Kerik was also recently convicted of corruption and similar crimes as those described herein.

71.     In addition to the named individual defendants, several officers of the NYPD assigned to the NYPD-6th Precinct -- as the named individual defendants -- routinely make unlawful arrests charging innocent persons with various crimes and/or offenses.

72.     That most of the arrests and charges made by officers assigned to the NYPD-6th Precinct are usually voided and/or dismissed by prosecutors for lack of evidence.

73.     That defendant City of New York has settled numerous lawsuits brought in this district and the Eastern District of New York against several officers assigned to the NYPD-6th Precinct concerning similar arrests and charges as those described herein.

74.     That defendant City of New York maintained the above described policies, practices, customs or usages knowing fully well that the policies, practices, customs or usages lead to improper conduct by its police officers and employees. In failing to take any corrective actions, defendant City of New York acted with deliberate indifference, and its failure was a direct and proximate cause of plaintiff's injuries as described herein.

75.     The actions of defendants, acting under color of State law, deprived plaintiff of her due process rights, and rights, remedies, privileges, and immunities under the laws and Constitution of the United States, treatise, ordinances, customary international law and norms, custom and usage of a right; in particular, the right to be secure in her person and property, to be free from abuse of process, the excessive use of force and the right to due process.

76.     By these actions, defendants have deprived plaintiff of rights secured by treatise, ordinances, customary international law and norms, custom and usage of a right, and the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution, in violation of 42 U.S.C. § 1983.

THIRD CAUSE OF ACTION: NEW YORK STATE CONSTITUTION, ARTICLE I, §§ 5, 6, 8, 11 & 12

77.     By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 76 of this complaint as though fully set forth herein.

78.     By reason of the foregoing, and by arresting, detaining and imprisoning plaintiff without probable cause or reasonable suspicion, and harassing and assaulting her and depriving her of due process and equal protection of laws, defendants deprived plaintiff of rights, remedies, privileges, and immunities guaranteed to every New Yorker by Article I, § 5 (prohibiting cruel and unusual punishments), Article 1, § 6 (providing for due process), Article 1, § 8 (guaranteeing freedom of speech), Article 1, § 11 (prohibiting discrimination in civil rights and providing for equal protection of laws) & Article I, § 12 (prohibiting unreasonable searches & seizures) of the New York Constitution.

79.     In addition, defendant officers conspired among themselves and conspired with other individuals to deprive plaintiff of her constitutional rights secured by Article I, §§ 5, 6, 8, 11 & 12 of the New York Constitution, and took numerous overt steps in furtherance of such conspiracy, as set forth above.

80.     Defendant officers acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employments as officers, agents, or employees. Defendant officers' acts were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers. Defendant officers acted willfully, knowingly, and with the specific intent to deprive plaintiff of her constitutional rights secured by Article I, §§ 5, 6, 8, 11 & 12 of the New York Constitution.

81.     Defendants, their officers, agents, servants, and employees were responsible for the deprivation of plaintiff's state constitutional rights.

FOURTH CAUSE OF ACTION: OTHER NEW YORK TORTS

82.     By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 81 of this complaint as though fully set forth herein.

83.     The conduct of the defendants, as described herein, amounted to false arrest/imprisonment, assault and battery, unlawful stop and frisk, unreasonable search and seizure, unreasonable detention, negligence, defamation, conspiracy, breach of special duty or relationship, loss of consortium, harassment, tortuous interference, abuse of power, fraud, trespass, negligent and intentional emotional distress and negligent hiring and retention of defendant officers.

84.     Consequently, plaintiff has been damaged and hereby demands compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

WHEREFORE, plaintiff respectfully prays judgment as follows:

    a.     For compensatory damages against all defendants in an amount to be proven at trial;

b.      For exemplary and punitive damages against all defendants in an amount to be proven at trial;

c.      For costs of suit herein, including plaintiff's reasonable attorney's fees; and;

d.      For such other and further relief as the court deems proper.

DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38 (b) of the Federal Rules of Civil Procedure, plaintiff demands a trial by jury.

Dated: Brooklyn, New York
       April 15, 2015

                    UGO UZOH, P.C.

                          /s/

                    _____
          By:    Ugochukwu Uzoh (UU-9076)
                 Attorney for the Plaintiff
                 304 Livingston Street, Suite 2R
                 Brooklyn, N.Y. 11217
                 Tel. No: (718) 874-6045
                 Fax No: (718) 576-2685
                 Email: u.ugochukwu@yahoo.com